UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HELEN TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1520-G |
| SAS INSTITUTE, INC., | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motion of the defendant, SAS Institute, Inc. ("the defendant" or "SAS"), for summary judgment ("the defendant's motion"), the motion of the plaintiff, Helen Tucker ("the plaintiff" or "Tucker"), to strike portions of the defendant's summary judgment evidence ("the plaintiff's motion to strike"), and the defendant's objections to the plaintiff's summary judgment response evidence ("the defendant's objections").  For the reasons set forth below, the plaintiff's motion to strike is denied, the defendant's objections are overruled, and the defendant's motion for summary judgment is granted.

I.  BACKGROUND

This case arises out of the defendant's termination of Tucker's employment

with SAS.  The defendant, a large, privately owned software company, laid off

twenty-three employees, including the plaintiff, in March 2005.  *See* Defendant's

Brief in Support of its Motion for Summary Judgment ("Defendant's Motion") at 1.

Employees at SAS are grouped into "divisions" and then into smaller "business

units."  *Id.* at 4.  Susan Carroll ("Carroll") was the "Operations Manager" for the

"Retail Business Unit" of the "Sales Division," and Tucker was an employee within

that business unit and division.  *Id.*  In 2004, SAS determined the revenues of the

Sales Division were inadequate to support its staff; thus, managers in the Sales

Division were required to eliminate jobs.  *Id.* at 6.

In preparation for the lay off, managers within the Sales Division, including

Carroll, were instructed to evaluate their respective business units and determine

which positions under their control could be eliminated in order to reduce costs.  *Id.*

at 1.  Managers were instructed to use three criteria in deciding which positions

should be eliminated:  (1) whether there were any redundant functions in their

subdivision that were being supported by employees outside the subdivision; (2) the

economic factors that contributed to the success of the business unit; and (3) whether

all support positions under the manager were absolutely critical to the business unit's

ability to conduct business.  *Id.* at 6.  Using these criteria, Carroll selected two

employees under her supervisory authority to be laid off.  *Id.* at 7.

On or about March 24, 2005,[1] Tucker was advised that she was being laid off

effective May 23, 2005.  *Id.*  Tucker also received ten weeks severance pay.  *Id.*  Upon

receiving notice of her impending termination, Tucker filed a charge of discrimination

with the EEOC.  *Id.* at 8.  Because the EEOC was unable to determine that SAS had

violated the relevant statutes, it sent Tucker a right to sue letter on May 5, 2005.  *See*

Defendant's Appendix at 56.

While her charge was pending before the EEOC, Tucker applied for three other

positions with SAS.  *See* Plaintiff's Complaint ¶ 16.  However, SAS did not hire

Tucker for any of those positions, and Tucker has alleged that SAS decided not to

hire her for any of the positions in retaliation for her decision to file a charge with the

EEOC.  *Id.*  SAS has moved for summary judgment on both of Tucker's claims -- for

disparate treatment in her termination, and for retaliation.

## II. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court

show that no genuine issue exists as to any material fact and that the moving party is

---

[1]     The defendant states Tucker was informed of the decision to lay her off
on March 24, 2005, but the plaintiff alleges in her complaint that the date was
March 23, 2005.  *See* Complaint ¶ 13.

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The disposition of a case through

summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy,

and inexpensive determination of actions, and, when appropriate, affords a merciful

end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn*

*Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

While all of the evidence must be viewed in a light most favorable to the

nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v.*

*S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations

nor unsubstantiated assertions will satisfy the nonmovant's summary judgment

burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002)

(citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis

of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues.  *Celotex*, 477 U.S. at 323.  The pleadings, depositions,

admissions, and affidavits, if any, must demonstrate that no genuine issue of material

fact exists.  FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in her pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

## B.  Standard for Summary Judgment Evidence

To the extent the nonmovant bears the burden of demonstrating a genuine issue of material fact, the nonmovant need not present evidence meeting the admissibility requirements for trial. See *Celotex*, 477 U.S. at 324. Rather, the nonmovant may rely on any form of evidence listed in Rule 56(c). See *id*. (noting the nonmovant does not need to depose her own witnesses to defeat a motion for

summary judgment).  While the form of the nonmovant's evidence need not be

admissible, the content of the evidence must meet evidentiary requirements.  See

*Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay

statements in an affidavit submitted to defeat summary judgment were "incompetent

summary judgment evidence").  That is, while an affidavit has limited admissibility at

trial, it is sufficient evidence to defeat a motion for summary judgment, but

inadmissible statements in the affidavit, such as hearsay statements, may not be

considered by the court.  See *id*.

### C.  The Plaintiff's Motion to Strike

The plaintiff has asked the court to strike portions of a number of affidavits

which the defendant submitted along with its motion for summary judgment.  The

plaintiff challenges paragraphs 4, 5, 6, 7, 8, 9, 10, 11 and 12 of Carroll's affidavit on

the grounds that they are based on hearsay and that they contain conclusory

statements.  *See* Plaintiff's Motion to Strike at 2.  The plaintiff challenges paragraphs

2, 3, 4, 5 and 6 of Marc Witorsch's affidavit and the exhibits to the affidavit on

hearsay grounds.  *Id.* at 2-3.  The plaintiff challenges paragraphs 2, 3, 4 and 13 of

Janet Stone's affidavit on the grounds that they are based on hearsay and that they

contain conclusory statements.  *Id.* at 3.  The plaintiff challenges paragraphs 2, 3, 4

and 5 of Angela Pettus's affidavit on the grounds that they are based on hearsay and

that they contain conclusory statements.  *Id.*  The plaintiff challenges paragraphs 2

and 3 of Shelly McClanahan's affidavit on the grounds that they are based on hearsay and that they contain conclusory statements.  *Id.*  Finally, the plaintiff challenges paragraphs 2 and 3 of Kelly Levens's affidavit on the grounds that they are based on hearsay and that they contain conclusory statements.  *Id.*

It is unclear which specific sentences or statements in any of the affidavits the plaintiff believes should be stricken.  *See* Plaintiff's Motion to Strike at 2-4.  The plaintiff simply provides a list of the paragraphs she wishes to challenge and the vague assertion that the information contained in those paragraphs is "based on inadmissible hearsay" and the paragraphs "are laced with conclusory, self-serving statements that are inadmissible."  *Id.*

The court is not required to review large quanta of evidence to ferret out inadmissible statements.  Rather, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken.  See *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004).  Objections lacking specificity do not satisfy the requirements of Rule 103.  *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998).  "A loosely formulated and imprecise objection will not preserve error.  Rather, a trial court judge must be fully apprised of the grounds of an objection."  *Id.* (citations omitted).

Because the plaintiff's objections in her motion to strike do not meet the

specificity requirement of Rule 103(a)(1), the motion is denied.  Even so, the court

will not consider any of the defendant's evidence that is plainly inadmissible.  *See*

Federal Rule of Evidence 103(d).

### D.  Defendant's Objections to Plaintiff's Evidence

The defendant has objected to numerous factual assertions contained in the

plaintiff's brief in response to the defendant's motion for summary judgment.  As

SAS has noted in its written objections, some of the factual assertions are supported

by citations to the plaintiff's appendix while others are not backed by any supporting

documentation.  Unless the assertions contained in the plaintiff's brief are supported

by accurate citations to the record, they are merely "unsubstantiated assertions"

which are not competent summary judgment evidence.  *See* Federal Rule of Civil

Procedure 56(c); *Calbillo*, 288 F.3d at 725.

Although a party's briefs should point the court to competent summary

judgment evidence -- such as affidavits, depositions or interrogatory responses

contained in the party's appendix -- in order to support the factual assertions

contained in the party's briefs and pleadings, the briefs themselves, like an attorney's

opening or closing argument in trial, are not evidence.  SAS has only objected to the

already inadmissible statements contained in Tucker's brief and not to the actual

evidence contained in the plaintiff's appendix.  For example, the defendant's first

"objection" is that "Plaintiff's characterization of herself as being qualified for the position" is not substantiated by the sections of her appendix to which the plaintiff cites. *See* Defendant's Objections at 2. This objection does not challenge the admissibility of the evidence cited by Tucker; it simply raises the argument that the portion of the record cited does not support Tucker's assertion that she was qualified to be an account executive. *Id.*; *see* Plaintiff Helen Tucker's Brief in Opposition to Defendant's Motion for Summary Judgment at 1, 9.

All of the defendant's "objections" follow the same form; they challenge the allegedly "conclusory," "overbroad," and/or "vague" contentions set forth in the plaintiff's brief. *See* Defendant's Objections at 2-10. Accordingly, the defendant's objections are better classified as responsive arguments. The defendant appears to have presented these objections to explain why it believes the plaintiff has not adequately shown the existence of a disputed material fact rather than for the purpose of objecting to any actual evidence. *Id.* Indeed, a review of the plaintiff's appendix reveals materials that are *prima facie* competent summary judgment evidence. The appendix contains Tucker's declaration, SAS's answers to interrogatories, documentary evidence obtained via discovery, deposition transcripts, an email, and a letter, none of which has been challenged by the defendant as inadmissible. *See* Plaintiff's Appendix at 1-81.

Because none of the defendant's "objections" challenges the validity of Tucker's summary judgment evidence, the objections are denied.  Even so, the court will not consider any of the plaintiff's evidence that it finds to be plainly inadmissible.  *See* Federal Rule of Evidence 103(d).

## E.  The Motion for Summary Judgment

SAS has moved for summary judgment on both the Title VII and Section 1981 causes of action alleged in Tucker's complaint:  (1) a claim involving unlawful employment practices, including disparate treatment and racial discrimination and (2) a claim involving retaliation for Tucker's complaints regarding the alleged racial discrimination.[2]  *See* Defendant's Motion at 11; Plaintiff's First Amended Complaint ¶¶ 18-26.

As a preliminary matter, it should be noted that the same evidentiary standards apply to claims under Title VII, 42 U.S.C. § 2000e, *et seq.*, as apply to claims under 42 U.S.C. § 1981.  *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir.

---

[2]      In its brief, the defendant separates Tucker's first cause of action, for disparate treatment, into two parts -- allegations of pre-termination wrongful conduct and allegations of wrongful conduct involved in Tucker's termination.  The plaintiff does not make such a distinction in labeling the causes of action in her amended complaint, nor does she argue in her response brief in favor of a cause of action for any adverse employment action except her termination.  *See* Plaintiff's First Amended Complaint ¶¶ 18-23; Plaintiff Helen Tucker's Brief in Opposition to Defendant's Motion for Summary Judgment at 8 (positing only that the plaintiff was subjected to adverse employment action when she was terminated).  Because the plaintiff has not analyzed her first cause of action -- as the defendant has -- in two parts, the court will not separate Tucker's disparate treatment cause of action in the discussion here.

2002).  Therefore, evidence that establishes a *prima facie* case of racial discrimination under Title VII will also establish a *prima facie* case of discrimination under Section 1981.  Likewise, evidence of a legitimate, non-discriminatory motive for the employment action will defeat both a Title VII claim and a Section 1981 claim. Because the same standards apply to the plaintiff's causes of action under both statutes, see *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996), the court will only directly address the plaintiff's Title VII allegations.

There are two broad types of Title VII cases -- those based on direct evidence, see *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), and those based on circumstantial evidence, see *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  Differing standards accompany these two expansive categories.  Under the *Trans World Airlines* line of cases, when a plaintiff is able to offer direct evidence in support of a Title VII claim, the defendant must produce evidence to show that the adverse employment decision would have occurred even in the absence of the unlawful purpose.  See *Fierros v. Texas Department of Health*, 274 F.3d 187, 192 (5th Cir. 2001).  Direct evidence in the context of Title VII includes "any statement or written document showing a discriminatory motive on its face."  See *id*. at 195 (quoting *Portis v. First National Bank*, 34 F.3d 325, 329 (5th Cir. 1994)).  When confronting a motion for summary judgment in a case involving direct evidence, the plaintiff -- to survive summary judgment -- need only show that retaliatory animus

motivated or was a substantial factor in the adverse employment decision.  See *Fierros*, 274 F.3d at 195.

In the case at bar, the plaintiff has presented no direct evidence of discrimination by SAS.  *See* Plaintiff Helen Tucker's Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief") at 6 (addressing only the standard for cases involving "indirect evidence").  Thus, the plaintiff must rely on circumstantial evidence to prove her claim.

When a plaintiff attempts to prove a violation of Title VII using circumstantial evidence, the *McDonnell Douglas* burden shifting analysis applies.  *See* 411 U.S. at 802.  The initial burden for such claims resides with the plaintiff, who must establish the *prima facie* elements of her claims.  See *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  Once the plaintiff demonstrates these initial elements, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision.  See *McDonnell Douglas*, 411 U.S. at 802.  If the defendant is able to state such a proper reason, the burden shifts back to the plaintiff to demonstrate that the reason proffered by the defendant is mere pretext.  See *Okoye*, 245 F.3d at 512; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

1.  *The Disparate Treatment Claim*

a.  <u>The Plaintiff's *Prima Facie* Showing</u>

To make a *prima facie* showing of discrimination, a plaintiff generally must produce evidence to establish the following:  (1) she belongs to a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) she was either replaced by someone outside the protected class or others outside the protected class were treated more favorably.  *Bryan v. McKinsey & Company, Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).  In cases involving a reduction in force where the plaintiff has not been replaced, as in this case, the fourth element may be established by showing that members outside the protected class remained in similar positions after the reduction in force.  *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318 (5th Cir. 1997).[3]

---

[3]      Tucker contends an alternate standard may also apply in this case based on *Ford v. General Motors Corp.*, 656 F.2d 117 (5th Cir. 1981).  *See* Plaintiff's Brief at 7.  However, nowhere in *Ford* does the test proffered by the plaintiff appear.  A similar test, however, has been adopted by the Fifth Circuit in age discrimination cases.  See, *e.g.*, *Woodhouse v. Magnolia Hospital*, 92 F.3d 248, 252 (5th Cir. 1996).  This test, applicable to reduction in force cases, provides that a plaintiff may establish her *prima facie* case by offering evidence that the plaintiff (1) is a member of a protected class, (2) suffered an adverse employment decision, (3) was qualified to assume another position at the time of the discharge, and (4) there is evidence to show that the employer intended to discriminate in reaching its decision.  *Id.*

Although Tucker cites this standard, or one similar to it, she does not explain how she meets its requirements.  It is undisputed that Tucker meets the first two requirements -- she is an African American and she was terminated.  However, she offers no evidence in support of the third or fourth elements.  *See* Plaintiff's Brief at 8-9.  Indeed, the closest plaintiff comes to broaching either element is a statement

(continued...)

Tucker has alleged that she satisfies the first three elements for the *prima facie* showing:  (1) she is African American, (2) she was qualified for her position as a business development specialist II, and (3) she was terminated.  *See* Plaintiff's Brief at 8.  Because the defendant does not dispute the plaintiff's contention that she satisfies these three elements,[4] the court will accept Tucker's assertion.  Cf. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (uncontroverted allegations by a non-movant must be taken as true on issues where the court is required to resolve factual disputes in the non-movant's favor).

With respect to the fourth element, Tucker must provide evidence that others outside her protected class were allowed to remain in positions similar to the one Tucker held before her termination.  See *Faruki*, 123 F.3d at 318.  The plaintiff

---

[3](...continued)
that employees outside her protected class who held different types of jobs than the one held by Tucker were offered promotions in order to avoid being terminated and that Tucker was not offered a similar opportunity.  *See* Plaintiff's Brief at 9.  However, as discussed *infra*, the evidence offered by Tucker in support of this proposition fails to show the employees at issue did, in fact, receive a promotion.  *See* Plaintiff's Appendix at 51.

Because Tucker's allegations regarding other employees is evidence of neither the plaintiff's qualifications for the positions nor any discriminatory intent by SAS, the plaintiff has failed to show she has met the third or fourth prongs of the *Woodhouse* test.

[4]    As noted above, the defendant split Tucker's first cause of action into two parts in its brief.  *See* Defendant's Motion at 11-22.  Although the defendant argues that Tucker did not suffer an adverse employment action before her termination, SAS concedes that Tucker's termination qualified as an adverse employment action.  See *id.* at 16 (challenging only Tucker's ability to establish the fourth element of her *prima facie* case for disparate treatment).

- 14 -

alleges that two employees outside her protected class, Kelly Levens ("Levens") and
Anissa Vaughn ("Vaughn"), held positions similar to hers at the time of her
termination, and both were treated more favorably as they were allowed to retain
their jobs.  *See* Plaintiff's Appendix at 27 (stating that Levens was a business
development specialist) and 30, 51 (stating that Anissa Vaughn was a business
development specialist in the retail business unit).

Tucker also argues that Sue Ellen Ferrebee ("Ferrebee") and Mary Chapman
("Chapman") were treated more favorably than Tucker, because both were promoted
from the position of sales administrator to that of sales strategist in order to shield
them from the reduction in force.  *See* Plaintiff's Brief at 9.  However, the citations
the plaintiff makes to her appendix in support of this proposition clearly refute her
allegation.  *See* Plaintiff's Appendix at 21.  The portion of the appendix at issue comes
from the deposition of Tucker's supervisor, Carroll.  When asked if Ferrebee and
Chapman had been "hired" or "moved" into the position of sales strategist, Carroll
replied:  "We did not hire them, their titles were changed, they were already
employees of the retail business unit. . . .  They had been performing that function
from the time that they joined the business unit, it was not a move or change in their
responsibilities."  *Id.* at 51.  Carroll elaborates on this point later in her deposition
when she explains that Ferrebee and Chapman did not have to fill out any additional

paperwork or interview for the position of sales strategist because it was not a different position from the one they held previously.  *Id.* at 53.

In response to plaintiff's proffer of evidence on the fourth element, SAS contends that none of the four individuals listed by the plaintiff was similarly situated.  Regarding Ferrebee and Chapman, the defendant notes that they held different jobs from Tucker as they were sales administrators (and later sales strategists) instead of business development specialists.  Defendant's Reply in Support of its Motion for Summary Judgment ("Defendant's Reply") at 4.  Indeed, in her deposition, the plaintiff admits that she was the only person in her business unit performing her job duties at the time she was terminated.  *See* Defendant's Appendix at 25 and 27.  Because Ferrebee and Chapman had different job titles and different job duties, their circumstances were not "nearly identical" to Tucker's.  See *Okoye*, 245 F.3d at 514-15.  Thus, the plaintiff cannot prove disparate treatment by relying on SAS's actions with respect to Ferrebee and Chapman.

Tucker has also alleged that Levens and Vaughn were similarly situated to her.  *See* Plaintiff's Brief at 9.  Moreover, the plaintiff has provided evidence in the form of deposition testimony stating that Levens and Vaughn were business development specialists under Carroll's supervision just like Tucker.  *See* Plaintiff's Appendix at 17 and 27.  Although the defendant disputes the fact that Levens and Vaughn worked under Carroll's supervision, *see e.g.*, Defendant's Appendix at 2, the court must resolve

this factual dispute in favor of the plaintiff.  *Lindsey*, 987 F.2d at 327 n.14.

Accordingly, the plaintiff has shown a *prima facie* case for disparate treatment.

### b.  The Defendant's Non-Discriminatory Reason

Because the plaintiff has made a *prima facie* showing of discrimination, she has

created a presumption that her disparate treatment claim is valid.  *Okoye*, 245 F.3d at

512.  The burden now shifts to the defendant to provide a legitimate, non-

discriminatory reason for its decision to terminate Tucker.  *Id.*  "This burden is one of

production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

SAS has satisfied its burden.  During SAS's 2004 fiscal year, revenues for the

retail business unit, the unit in which the plaintiff worked, "were significantly less

than anticipated and less than the other Business Units at that time."  Defendant's

Motion at 17; *see* Defendant's Appendix at 34 (Tucker admitting that the revenues

for her business unit "were not good compared to the other business units").

Accordingly, SAS determined the ratio of support employees to sales employees was

too high, and decided to eliminate twenty-three positions, including the one held by

Tucker.  *See* Defendant's Appendix at 3, 65.  All the positions eliminated by SAS

were in the sales division, of which the plaintiff's business unit was a part.  *Id.* at 66.

Carroll selected Tucker for layoff because "there was an inadequate volume of total

sales revenues to support her position."  Defendant's Appendix at 3.

Because eliminating a position for economic reasons during a reduction in workforce is a valid, non-discriminatory reason for terminating an employee, see *Equal Employment Opportunity Commission v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996), SAS has satisfied its burden on this prong of the *McDonnell Douglas* burden shifting analysis.

### c. The Plaintiff's Proof of Pretext or Mixed Motives

In a claim for disparate treatment, the burden shifting analysis requires the plaintiff, at the pretext stage, to persuade the court that she has been the victim of intentional discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To satisfy her burden using circumstantial evidence, the plaintiff must provide sufficient proof that the defendant's purported justification for the adverse employment action is "unworthy of credence" and was simply a pretext for discrimination. *Id.*; *Okoye*, 245 F.3d at 513. Because the defendant has offered legitimate, non-discriminatory reasons for laying off the plaintiff, Tucker must

> offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). Thus, the plaintiff must prove "'by a preponderance of the evidence that the legitimate reasons offered

by the defendant were not its true reasons' . . . 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253, 256).

The plaintiff offers several reasons for her belief that the defendant's decision to eliminate her position was a pretext for discrimination. First, she alleges the position was not actually eliminated because the critical functions of her job were moved to another employee, Levens, who was hired the same month that Tucker was terminated.[5] Plaintiff's Brief at 13. The plaintiff supports this allegation by pointing to SAS's response to an interrogatory indicating that Levens began work as a business development specialist on March 1, 2005 and with a citation to Tucker's deposition stating similar information. *See* Plaintiff's Appendix at 6, 27. The defendant counters that Tucker has no evidence that Levens was hired into her business unit or that the plaintiff's job duties were transferred to Levens. Defendant's Reply at 8. Indeed, SAS points to Tucker's own deposition in which the plaintiff admits that

---

[5]     In portions of her brief, the plaintiff implies that SAS has committed some wrong simply because the "critical functions" of Tucker's former job are still being performed by employees within the company. *See* Plaintiff's Brief at 8. However, a company is under no obligation to eliminate all the job duties handled by an individual in a given position when the company eliminates the position. Tucker seems to be laboring under the mistaken impression that a company may only decide to lay off employees when the company decides it no longer has a need for any of the job duties previously performed by that employee. However, the elimination of a position merely indicates a company is overstaffed or that job duties have been allocated inefficiently. A reduction in workforce does not necessarily imply the company has fewer duties for its employees to collectively perform; it simply indicates the company can afford fewer employees to carry out whatever duties must be done.

Levens belonged to a different business unit -- the customer relations manager team --
and that others, including Vaughn, took over some of her job responsibilities.
Plaintiff's Appendix at 27-29. The summary judgment evidence does not show,
however, that the responsibilities of Tucker's job were transferred to Levens.

Next, Tucker posits that Vaughn was brought into the retail business unit and
promoted to a business development specialist III. *See* Plaintiff's Brief at 13. Tucker
does not explain how this demonstrates a pretext for discrimination, except to state
that Tucker was not informed that the position was available. *Id.* The court will
assume Tucker's argument is that SAS's failure to offer Tucker the position occupied
by Vaughn is evidence of discrimination. This argument is unpersuasive, however,
because the defendant has produced evidence that Vaughn was not moved into a new
position, but simply received a title change to more accurately reflect the work she
was already doing. *See* Plaintiff's Appendix at 70. Therefore, there was not a vacant
position for which the plaintiff could have been considered, and no hypothetical
decision to consider -- or not to consider -- the plaintiff for such a non-existent
position could have been made.

Third, the plaintiff argues that Chapman and Ferrebee were promoted to sales
strategists to prevent them from being terminated. Plaintiff's Brief at 13-14. Because
the plaintiff does not argue that she was more qualified for these positions than
Chapman or Ferrebee or that she should have been considered for these positions, she

has not shown that any promotions or title changes received by Chapman and
Ferrebee are pretexts for discrimination.  See *Price v. Federal Express Corp.*, 283 F.3d
715, 723 (5th Cir. 2002).

Tucker further argues that the defendant's decision to eliminate her position
was pretextual because she applied for another sales strategist position but was not
hired, and because she was not offered the business development specialist positions
received by Levens and Vaughn.  The analysis in the previous paragraph regarding the
job title changes received by Chapman and Ferrebee applies with equal force to this
argument.  In order to create a fact issue on pretext regarding a promotion or a move
to another position, Tucker must provide evidence that she was more qualified for
those positions than the individuals selected.  *Id.*  Tucker has made no showing that
she was more qualified than Levens, Vaughn, or the individual hired for the sales
strategist position for which she applied.  Indeed, Tucker cannot make such a
showing with respect to the sales strategist position because none of the individuals
interviewed for the position was hired, and the position was eliminated before being
reposted at a later date.  *See* Defendant's Appendix at 12.

Tucker's next two arguments -- that the defendant has hired new employees
within Tucker's former business unit since her termination and that SAS has hired
new account executives in the sales division since plaintiff's termination without
considering Tucker for the positions -- fail for the same reason.  *See* Plaintiff's Brief at

14. Although the plaintiff has offered evidence that individuals have been hired, she has provided no evidence that she was even qualified for the positions, let alone *more qualified* than the individuals who were actually hired. *See* Plaintiff's Appendix at 57, 79.

Tucker's final argument is premised on the fact that Levens, Ferrebee and Chapman have all received raises since the plaintiff's termination. Tucker argues that these raises prove that the financial condition of the sales department was not the true reason for the defendant's decision to terminate Tucker.[6] Plaintiff's Brief at 14-15. Even if the court were to accept Tucker's argument by agreeing that SAS's decision to eliminate twenty-three positions -- while giving raises to other employees -- was fiscally unwise, Title VII lawsuits are not "vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997); see also *Bell v. Bank of America*, 171 Fed.Appx. 442, 445 (5th Cir. 2006). Furthermore, although an examination of SAS's business decisions might have been instructive if Tucker's position had been the only one eliminated, that is not the case. SAS eliminated twenty-three positions, and more than ninety percent of those jobs were held by individuals outside the plaintiff's protected class. *See* Defendant's Appendix at 7. The court cannot accept the plaintiff's argument that economic

---

[6]    At the same time, Tucker admits that the defendant's assertion that economics motivated its decision to reduce its workforce "could very well be true." Plaintiff's Brief at 14. In spite of Tucker's contradictory admission, the court will still evaluate the plaintiff's final argument.

factors did not play a role in the layoff; at its core, this argument rests on the absurd proposition that SAS terminated twenty-one employees outside the plaintiff's protected class as a pretext to terminate two African American employees.

In addition, though the plaintiff does not raise the argument specifically in the section of her brief regarding her proof of pretext, Tucker took several opportunities to point out her qualifications for the job she held that was eliminated by SAS. *See*, *e.g.*, Plaintiff's Brief at 2, 7-8. Her qualifications for that job, however, are not directly relevant to the issue of discrimination. "In the context of a reduction in force . . . the fact that an employee is qualified for his job is less relevant -- some employees may have to be let go despite competent performance." *Texas Instruments*, 100 F.3d at 1181. Instead, the plaintiff must show that she was terminated in favor of less qualified individuals outside her protected class in order for an issue of material fact to exist. *Id.* Tucker has not met this burden.

Although the plaintiff has failed to show that SAS's decision to eliminate her position was merely a pretext for discrimination, that is not the end of the court's inquiry. The court must also determine whether Tucker has met the alternative standard for creating a fact issue by showing that the plaintiff's protected characteristic -- *i.e.*, her race -- was a motivating factor in SAS's decision to eliminate her position. *Keelan*, 407 F.3d at 341. To satisfy the alternative standard, Tucker must provide some evidence that the employer's failure to retain her was based, at

least in part, on discriminatory intent.  See *Roberson v. Alltel Information Services*, 373
F.3d 647, 652 (5th Cir. 2004).

Tucker has neither cited the mixed motive standard nor explicitly attempted to
prove disparate treatment thereunder.  *See* Plaintiff's Brief at 12-16.  For the same
reasons that Tucker's arguments regarding pretext fail, they also fail to show SAS's
decision to eliminate the plaintiff's position was partially based on discriminatory
intent.  See *Roberson*, 373 F.3d at 652 (where the plaintiff offers no evidence from
which a fact finder can infer discriminatory intent, the result of the mixed motives
inquiry established in *Desert Palace* is the same as the result under the *McDonnell
Douglas* pretext inquiry).

Because the plaintiff has failed to make a showing of pretext or mixed motives,
the burden does not shift back to the defendant "'to prove that the same adverse
employment decision would have been made regardless of discriminatory animus.'"
*Keelan*, 407 F.3d at 341.

In sum, the defendant has met its summary judgment burden on the plaintiff's
disparate treatment cause of action and is entitled to judgment on that claim.

2.  *The Retaliation Claim*

a.  The Plaintiff's *Prima Facie* Showing

To carry her initial burden of making a *prima facie* showing of discrimination
for her retaliation claim, the plaintiff must produce evidence to establish the

following:  (1) she engaged in a protected activity, (2) she was subject to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.  See *Ackel*, 339 F.3d at 385.

The plaintiff satisfies the first two elements.  Tucker filed a charge with the EEOC -- a protected activity -- and she was not hired for any of the positions to which she applied — an adverse employment action.  *See* Plaintiff's Brief at 16. Moreover, SAS has not argued that Tucker failed to establish the first two elements. Thus, the burden falls on Tucker to make a *prima facie* showing that a causal connection exists between her EEOC complaint and the defendant's decision not to hire her.

### b.  The Causal Connection Evidence

In a claim for retaliation, the *McDonnell Douglas* burden shifting analysis forces the courts to engage in two independent causation inquiries -- the first at the *prima facie* stage and the second at the pretext stage.  The causal connection element of the *prima facie* case need not be proven under a "but for" causation standard; in other words, it is not initially necessary for the plaintiff to demonstrate that the protected activity was the sole reason for the adverse employment decision.  See *Ackel*, 339 F.3d at 385; *Gee*, 289 F.3d at 345.  "Nevertheless, the plaintiff must produce *some* evidence of a causal link between the protected activity and the adverse employment action to

establish a prima facie case of retaliation." *Ackel*, 339 F.3d at 385 (emphasis in original).

Tucker presents three arguments in her attempt to show a causal connection between the defendant's decision not to hire her and her charge of discrimination: (1) she should have been hired as a sales strategist because she had never received any negative feedback while working as an account executive, nor any reprimands regarding the quality of her work; (2) Angela Pettus ("Pettus") obtained information from some unidentified person regarding the plaintiff's previous sales records at the same time that Tucker's charge of discrimination was pending before the EEOC; and (3) the plaintiff was qualified (according to her) for the account manager and financial services sales specialist positions for which she applied because she had "equivalent experience" and, thus, was not required to have a college degree. *See* Plaintiff's Brief at 16-17; Tucker Declaration ¶ 16. Even if the court assumes that all of the plaintiff's contentions are correct, Tucker has still failed to meet her burden of showing a *prima facie* causal connection between her EEOC charge and the defendant's decision not to hire her.

Tucker's arguments provide absolutely no evidence that SAS refused her a job in retaliation for the charge she filed with the EEOC. Tucker does not even contend that Pettus or any of the other decision-makers knew of her EEOC charge, let alone that such knowledge influenced their respective decisions not to hire her. See *Gee*,

289 F.3d at 346 ("in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker").  Moreover, the defendant has provided uncontroverted evidence that none of the individuals who made the decision not to hire the plaintiff was influenced by Tucker's charge of discrimination.  *See* Defendant's Appendix at 8, 9, 11.

Because Tucker has provided insufficient evidence that a causal connection exists between the charge she filed with the EEOC and the defendant's decision not to hire her, she has failed to show a genuine issue of material fact regarding her retaliation claim.  Consequently, SAS is entitled to summary judgment on Tucker's retaliation cause of action.

## III.  CONCLUSION

For the reasons set forth above, the motion of the plaintiff to strike the defendant's summary judgment evidence and the defendant's objections to the plaintiff's summary judgment evidence are **DENIED**, and the defendant's motion for summary judgment is **GRANTED**.  Judgment will be entered that Tucker take nothing from SAS on her claims in this case.

**SO ORDERED**.

November 7, 2006.

_____
A. JOE FISH
CHIEF JUDGE

- 27 -